UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMARTER HOA SOLUTIONS INC.,<br>　　　Plaintiff,<br><br>　　v.<br><br>CARMEN PEÑA; CASANET PROPERTY MANAGEMENT LLC,<br>　　　Defendants. | Case No. 24-cv-01781-JAH-MMP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFEDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DENYING MOTION FOR SANCTIONS**<br><br>**[ECF No. 20]** |

Pending before the Court is Defendant Carmen Peña's Motion to Dismiss, which includes a request for sanctions and which the Court previously construed as a motion for judgment on the pleadings. ECF Nos. 20 ("Motion"), 33. Plaintiff Smarter HOA Solutions Inc. ("HOA") opposes the Motion and Defendant Peña, proceeding pro se, has filed a reply. ECF Nos. 37 ("Response"), 39 ("Reply"). With limited exceptions, all proceedings in this case have been stayed pending the Court's order on the instant Motion. ECF No. 33.

This action arises from HOA's suit to enforce a Non-Competition and Non-Disclosure Agreement (the "Agreement") against Defendant Peña, the former co-owner and a former employee of HOA, following the termination of Defendant Peña's employment with HOA. HOA also seeks damages based on allegations that, following

the termination of Defendant Peña employment with HOA, Defendant Peña's unlawfully retained HOA's company property and revealed certain confidential, customer information, and/or trade secret information to Defendant Casanet Property Management LLC ("Casanet").

HOA filed suit against Defendant Peña and Casanet asserting claims for (1) Breach of Written Non-Competition and Non-Disclosure Agreement; (2) Conversion; (3) Intentional Interference with Contractual Relations; (4) Intentional Interference with Prospective Economic Advantage; (5) Trade Secret Misappropriation Under the Defend Trade Secrets Act , 18 U.S.C. § 1836; and, (6) Misappropriation of Trade Secrets under Cal. Civ. Code § 3426. HOA alleges all six causes of action against Defendant Peña and Counts 3-6 against Casanet.

Relevant here, HOA and Defendant Peña agree that the Agreement relates to the sale of Defendant Peña's 50% ownership of the issue stock of HOA but disagree as to whether this is sufficient to render the Agreement enforceable under California law. Defendant Peña also disputes the allegations in the remaining claims. ECF No. 8 ("Answer").[1]

For the reasons discussed below, Defendant Peña's motion for judgment on the pleadings is **GRANTED IN PART** and **DENIED IN PART**. Defendant Peña's motion for sanctions is **DENIED**.

## I.  BACKGROUND

Smarter HOA Solutions Inc. is a company engaged in the business of providing management services for homeowner associations. Defendant Peña was previously an officer, director and owner of 50% of the outstanding and issue stock of HOA.

On December 19, 2022, Defendant Peña and co-owner Pierre Dion, on behalf of

---

[1] In a separate motion taken under submission by this Court, Casanet has filed a request for good faith settlement determination seeking dismissal of HOA's claims against Casanet and requesting an order approving a settlement between HOA and Casanet. ECF No. 35. The Court will issue an order on that motion in due course.

HOA as the seller, and Luis Adrian Arce, on behalf of Warranted Management Inc. as the buyer (collectively, the "Contracting Parties"), executed a Letter of Intent to Purchase ("Letter of Intent") for the total sale of HOA's business operations and assets in exchange for an estimated price of $400,000.  ECF No. 1-2 ("Exh. A") at 6–7.  The Letter of Intent sets an expected settlement date on or before February 15, 2023, and contains a covenant not to compete barring HOA from soliciting HOA's clients for a period of five years from the close of escrow.[2]

On June 23, 2023, prior to the sale of her stock, Defendant Peña entered into the Agreement with HOA.  Exh. A at 2–5.  The Agreement prohibits Defendant Peña—"for any reason whatsoever, directly or indirectly, for h[er]self or on behalf of or in conjunction with any other person"—from the following within San Diego and Riverside counties:

- (i) Participating in "other activities," defined as "[e]ngag[ing] as an officer, director, shareholder, owner, principal, partner, lender, joint venturer, employee, independent contractor, consultant, advisor, or sales representative, in any Competitive Business[3];"

- (ii) Soliciting employees, meaning to "[e]ncourage, induce, attempt to induce, recruit, solicit, attempt to solicit or take any action that is intended to induce or encourage, either personally or through others, any person who is, at that time, within the Restricted Territory, an employee of the Company or any of its subsidiaries, in a managerial capacity for the

---

[2] The noncompete clause expressly prohibits HOA from the following activities: "canvas or solicit any business from [HOA]'s Clients; Request or advise [HOA]'s Clients to withdraw, curtail, or cancel their business with the Buyer; Disclose to any other person, firm, partnership or corporation the names of Seller's Clients unless required to do so by law, government agency or court order."  Exh. A at 6.

[3] "Competitive Business" is defined as "[any individual, corporation, limited liability company, partnership, firm, or other business of whatever nature] engaged in the business of providing HOA Management Services."  Exh. A. at 3.

3

> - purpose or with the intent of enticing such employee away from or out of the employ of the Company or any of its subsidiaries;" and,
> - Soliciting customers, defined as "[c]all[ing] upon any person or entity that is, at that time, or that has been, within five (5) years prior to that time, a customer of the Company or any of its subsidiaries, within the Restricted Territory for the purpose of soliciting or selling services in direct competition with the Company or any of its subsidiaries within the Restricted Territory."

Exh. A at 2.  Although the Agreement establishes a non-compete period of five years, the official start date of the five-year period is unclear as defined in the Agreement.[4]

On June 30, 2023, the Contracting Parties executed a Stock Purchase Agreement[5] finalizing the sale of HOA's stock and business assets to Luis Adrian Arce, who is not a party in this suit, in exchange for cash.  Following the close of escrow, Defendant Peña became an employee of HOA until the date the termination of her employment with HOA in August of 2024.

## II.  DISCUSSION

**A.  Legal Standard**

A district court may grant a Rule 12(c) motion for judgment on the pleadings when there is no issue of material fact, and the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  In considering a motion for judgment on the pleadings, a district court accepts all well-pleaded factual

---

[4] The Agreement defines the "Non-compete Period" as the "five (5) year period immediately following the termination of the Consulting Agreement between [HOA] and Consultant whereby [Defendant Peña] provides services to [HOA]."  Exh. A at 3. The Agreement does not define or otherwise identify the "Consulting Agreement" or "Consultant."

[5] A copy of the Stock Purchase Agreement (the "Purchase Agreement") was not attached to the parties' pleadings, nor are the terms of the Purchase Agreement plead anywhere in the current court record.

allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Unite Here Loc. 30 v. Sycuan Band of the Kumeyaay Nation*, 35 F.4th 695, 700 (9th Cir. 2022). A district court will not consider documents or evidence beyond the pleadings. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

Given that Defendant Peña is appearing pro se, the Court will "liberally construe" Defendant Peña's pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[a] document filed pro se is 'to be liberally construed'"); *see also* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

### 1. Defective Notice Under Fed. R. Civ. P. 7(B)(1)

As an initial matter, HOA argues that Defendant Peña failed to comply with the requirements of Rule 7(B)(1) because the motion "does not state the relief sought, which specific causes of action are being challenged, or the exact legal basis upon which the motion is being brought." Resp. at 6. Specifically, HOA argues that Defendant Peña broadly cited to "California Business & Professions Code 16600 and Public Policy violations," mentioned "two cases without any citations," and failed to "state what part of the opinions are relied upon in the motion or make any analysis of the facts or holdings of said cases with regard to the facts alleged in this case." *Id.* According to HOA, such deficiencies "make responding to the motion challenging as it is unclear upon what legal authorities moving party is relying upon." *Id.*

In liberally construing Defendant Peña's pleadings, and given that HOA successfully identifies and responds to Defendant Peña's arguments and requested relief, the Court rejects HOA's argument and finds that Defendant Peña has provided sufficient notice under Rule 7(B)(1).

### 2. Breach of Written Non-Competition and Non-Disclosure Agreement

Defendant Peña bases her argument on her assertion that the noncompete provisions of the Agreement are unlawful and therefore voidable and unenforceable under California law. Mot. at 20; Reply at 2–3. These arguments are grounded on the

premise that the noncompete provisions constitute a restraint on her ability to engage in a lawful profession, trade, or business in an employment context and are therefore violative of public policy in California and void pursuant to section 16600 of the California Business and Professional Code. *Id.* Moreover, assuming arguendo that the Agreement constitutes a noncompete made in an employment context, Defendant Peña argues that the Agreement does not fall within any exception to the general ban on noncompete agreements under California law. *Id.*[6]

HOA argues that notwithstanding the general ban on noncompetes in California, the challenged provisions of the Agreement are valid for two reasons: 1) the Agreement falls squarely within the statutory exception under section 16601 because it relates to the sale of a business, and 2) the Agreement is valid because it is necessary to protect HOA's trade secrets. Resp. at 10–11 (citing *Alliant Ins. Services v. Gaddy*, 159 Cal.App.4th 1292, 1306 (2008).

Accordingly, to determine whether Defendant Peña is entitled to judgment on the pleadings, the Court must first consider whether the Agreement is valid and enforceable under section 16600 as a matter of law.[7]

a) Validity of the Noncompete Under Cal. Bus. & Prof. Code § 16600

In determining a contract's validity under section 16600, the Court "direct[s] its inquiry according to the actual statutory language [of section 16600]: whether the

---

[6] Defendant Peña also argues that HOA failed to provide the requisite notice under section 16600.1 requiring an employer to notify an employee that a noncompete clause in an employment agreement is void under the statute. Mot. at 3; Cal. Bus. & Prof. Code § 16600.1. Such notice is only required, however, where an employer knows a noncompete clause is void. *Id.* This argument also fails as there is no proof on the record that HOA failed to provide such notice, nor does lack of notice itself provide Defendant Peña with additional or independent grounds to challenge a noncompete clause.

[7] For purposes of this Motion, the Court shall except the allegations in the complaint as true and disregard Defendant Peña's challenge to the authenticity of the Agreement attached to HOA's complaint. Answer ¶ 9; *see Unite Here Loc. 30*, 35 F.4th at 700.

challenged provision 'restrain[s anyone]  from engaging in a lawful profession, trade, or business of any kind.'" *Golden v. Cal. Emerg. Physicians Med. Grp.* (*Golden I*), 782 F.3d 1083, 1092 (9th Cir. 2015) (citing Cal. Bus. & Prof. Code § 16600(a)).  "This prohibition extends to any 'restraint of a substantial character,' no matter its form or scope." *Id.* (holding § 16600 extends to contracts beyond noncompetition agreements and finding the district court abused its discretion when it "began its analysis by stating a narrower principle: '[i]n California, covenants not to compete are void'").

Under Ninth Circuit caselaw, "whether a restraint is one of a substantial character is a mixed question of law and fact." *Golden v. Cal. Emerg. Physicians Med. Grp.* (*Golden II*), 896 F.3d 1018, 1026 (9th Cir. 2018).  A contractual restraint qualifies as a "restraint of substantial character" if the restraint "significantly or materially impedes a person's lawful profession, trade, or business." *Id.* at 1024; *see also Int'l Bus. Machs. Corp. v. Bajorek*, 191 F.3d 1033, 1041 (9th Cir. 1999) ("We are not free to read California law without deferring to our own precedent on how to construe it.").  "To meet this standard, a provision need not completely prohibit the business or professional activity at issue, nor does it need to be sufficient to dissuade a reasonable person from engaging in that activity." *Id.* (citing *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 292 (Cal. 2008)).  Rather, "its restraining effect must be significant enough that its enforcement would implicate the policies of open competition and employee mobility that animate section 16600." *Id.* (citing *Edwards*, 189 P.3d at 291).  Because "a restraint can be 'substantial' even if it is reasonable and even if it is narrow," a contractual restraint will rarely be "so insubstantial that it escapes scrutiny under section 16600." *Id.* at 1023–24 (citing *Edwards*, 189 P.3d at 290–293).

Here, HOA argues that section 16600 is inapplicable because the Agreement falls squarely within the statutory exception under section 16601. Resp. at 10–11.  This argument misses the point and falls short of an admission that the Agreement is, in the first instance, barred by section 16600.  While true that the challenged provisions may be valid if a statutory exception to the general rule applies, the Court must first

7

determine which, if any, of the challenged provisions violate section 16600.

Defendant Peña generally cites to the noncompetition and nonsolicitation clauses to allege that the Agreement "severely limit[s]" her from "find[ing] alternative employment in [her] career and "restrains . . . [her] from earn[ing] a living." Mot. at 1. As a result, Defendant Peña moves for sanctions based on lost wages, benefits loss, job searches, and emotional distress. Mot. at 5; Reply at 6.

Upon review, the Court finds the terms of section 1 of the Agreement support Defendant Peña's allegations by impeding Defendant Peña from engaging in the business of providing HOA Management Services in three ways. First, section 1(a)(i) prohibits Defendant Peña from "[e]ngag[ing] as an officer, director, shareholder, owner, principal, partner, lender, joint venturer, employee, independent contractor, consultant, advisor, or sales representative" in "any individual, corporation, limited liability company, partnership, firm, or other business of whatever nature" engaged in the business of providing HOA Management Services. Second, section 1(a)(ii) prohibits Defendant Peña from taking "any action" to solicit employees currently employed by HOA or any of HOA's subsidiaries. Finally, section 1(a)(iii) prohibits Defendant Peña from "soliciting or selling services in direct competition with [HOA]" to "any person or entity that is, at that time, or that has been, within five (5) years prior to that time, a customer of [HOA] or any of its subsidiaries."

By broadly imposing these restrictions "for any reason whatsoever, directly or indirectly, for h[er]self or on behalf of or in conjunction with any other person," clauses (i) and (iii) affect Defendant Peña's current and future ability to seek and maintain *any* form of employment or compensation for services relating to the business of providing HOA Management Services. *See Golden II*, 896 F.3d at 1024–26. Thus, in liberally reviewing Defendant Peña's request for sanctions to assess the impact of such restrictions, the Court agrees the overbroad language of these restrictions create a "restraining effect" that "implicate the policies of open competition and employee mobility." *Golden II*, 896 F.3d at 1023–24. Similarly, the cases relied upon by HOA

compel a finding that clause (ii), which relates to nonsolicitation of current HOA employees, also constitutes a restriction of substantial character under section 16600. *See, e.g.*, *Fillpoint, LLC v. Maas*, 146 Cal. Rptr. 3d 194, 200 (Cal. Ct. App. 2012) (finding that a clause preventing defendant from "employing or soliciting for employment any of [the company's] employees or consultants" was not enforceable under sections 16600 and 16601).

Accordingly, the Court finds that the challenged clauses in the Agreement constitute substantial restraints, thereby rendering the Agreement void under section 16600 unless an exception applies. *See Golden II*, 896 F.3d at 1028 (finding an entire agreement void under section 16600 where no exception applied); *see also Strategix, Ltd. v. Infocrossing W., Inc.*, 48 Cal. Rptr. 3d 614, 617–618 (Cal. Ct. App. 2006) (declining to "rewrite overbroad covenants not to solicit" because "courts will not strike a new bargain for the parties "for the purposes of saving an illegal contract"").

    i.    <u>Statutory Exception Pursuant to Cal. Bus. & Prof. Code § 16601</u>

Because the Court found the Agreement void under § 16600, the Courts accept the factual allegations in the complaint as true and construes the pleadings in the light most favorable to HOA to determine whether the exception pursuant to § 16601 applies.

As discussed, section 16600 expressly prohibits noncompetition agreements and clauses in an employment context, no matter how narrowly tailored, unless the agreement falls within a statutory exception. Cal. Bus. & Prof. Code § 16600(b)(1) (citing *Edwards*, 189 P.3d at 288). Section 16601 provides a statutory exception to California's general ban on noncompetition agreements when made in connection with the sale or dissolution of a business. *Edwards*, 189 P.3d at 290. Section 16601 states, in relevant part:

> **[A]ny owner of a business entity selling or otherwise disposing of *all* of his or her ownership interest in the business entity** . . . may agree with the buyer to refrain from carrying on a similar business within a specified geographic area in which the business so sold, or . . . has been carried on, so long as the buyer, or any person

deriving title to the goodwill or ownership interest from the buyer, carries on a like business therein.

Cal. Bus. & Prof. Code § 16601 (emphasis added).  For this exception to apply, courts must determine that 1) the underlying business transaction clearly falls within this limited exception and 2) the restriction satisfies the intent and purpose of section 16601. *See Fillpoint*, 146 Cal. Rptr. 3d at 200, 203–204 (internal citations omitted).

Both HOA and Defendant Peña rely on *Fillpoint, LLC v. Maas* to support their arguments regarding the validity of the Agreement under section 16601.  In *Fillpoint*, the appellate court considered whether noncompetition and nonsolicitation covenants in an employment agreement were enforceable under section 16600.  146 Cal. Rptr. 3d at 200 (collecting cases).  There, the plaintiff sued for breach of an employment contract and interference with a contract after defendant terminated employment with plaintiff and obtained employment with plaintiff's competitor.  *Id.* at 195–196.  The plaintiff argued the challenged covenants in the employment agreement were valid and enforceable because the employment agreement and a stock purchase agreement entered into by the same parties at the same time were "part of a single transaction and must be read together."  *Id.* at 196.  Although the court agreed that, based on the facts, "the purchase agreement and the employment agreement must be read together," the court ultimately found that "the fact that the purchase agreement and the employment agreement should be read together [does not] automatically mean the covenant not to compete in the employment agreement is enforceable."  *Id.* at 203.  Rather, "that the purchase agreement and the employment agreement should be read together begins, not ends, the analysis [of] whether the covenant not to compete in the employment agreement is enforceable."  *Id.*

The appellate court then went on to analyze the challenged clauses in the context of the "single transaction" and held that the clauses were overbroad and inconsistent with the proposes and terms of section 16601.  *Id.* at 203–204.  The court reasoned that the noncompetition terms of the purchase agreement—which prevented defendant from

10

competing with plaintiff, setting up a business to compete with plaintiff, or assisting someone else to set up or continue a business in competition with plaintiff during the three-year period immediately following plaintiff's acquisition of the company—were "focused on protecting the acquired goodwill for a limited period of time" and therefore served the purpose of section 16601. *Id.* In contrast, the court found that the "employment agreement's covenant targeted an employee's fundamental right to pursue his or her profession" because the covenants prevented defendant from:

> (1) making sales contacts or making actual sales to anyone who was [the company's] customer or potential customer during the two years preceding the termination of [defendant's] employment, or assisting others in doing so; (2) working for or owning an interest in any business that was in the same business as, or would compete with, [the company's]; or (3) employing or soliciting for employment any of [the company's] employees or consultants. The covenant in the employment agreement affected [defendant's] rights to be employed in the future and, in this case, for a year after the end of the three-year period of the purchase agreement's covenant.
>
> [. . .]
>
> The employment agreement even barred sales to or solicitation of potential customers.

*Id.* Accordingly, the court found the challenged provisions of the employment agreement "cannot be reconciled with California's strong public policy permitting employees the right to pursue a lawful occupation of their own choice" and therefore "do[] not fit within the limited exception and [are] not enforceable." *Id.* at 204.

Here, HOA's complaint alleges that the Agreement "was related to the purchase of [Defendant Peña's] business by [HOA.]" ECF No. 1 ("Complaint"). In support, HOA attaches a copy of the fully executed Agreement to the Complaint which contains the following recitals:

> A. The Company is engaged primarily in the business of providing Management Services for Home Owner Associations ("HOA Management") in the San Diego County region and Seller was an Officer, Director and owner of 50% of the outstanding and issue

> stock of the Company (the "Shares"), **having sold the Shares** to Luis Adrian Arce **pursuant to a Stock Purchase Agreement dated June __ 2023 (the "Purchase Agreement")** and as such the Seller has intimate knowledge of the Company's business operations, technology, clients, trade secrets, competitively sensitive confidential business or professional information that otherwise would not qualify as a trade secret, marketing strategy, or sales plans and other proprietary information (the "Confidential Information").
>
> B. The Company has and will have a protectable interest **in connection with Seller's sale of the Shares** and Seller's knowledge of the Company's Confidential Information.

Exh. A at 2 (emphasis added). Notably, the Agreement does not provide further information regarding the stock purchase or the sale of the business more generally. What is more, although the Agreement is titled "Exhibit B," neither HOA nor Defendant Peña allege what contract, if any, the Agreement is attached to, nor do the parties include as an attachment to their pleadings the final Purchase Agreement executed by the parties, or any other contract that may be relevant to this Court's analysis of the underlying business transaction. Without these documents, it is unclear to the Court whether the Agreement was signed as part of the Purchase Agreement or any other relevant contract, such as Defendant Peña's employment contract with HOA or the Consulting Agreement identified in section 1(b)(iv).[8]

---

[8] The Court notes that section 2 of the Agreement contains an integration clause referencing an employment agreement and that provides as follows:

> COMPLETE AGREEMENT. This written Agreement is the final, complete, and exclusive statement and expression of the agreement between the Company and Seller and of all the terms of this Agreement, and it cannot be varied, contradicted, or supplemented by evidence of any prior or contemporaneous oral or written agreements. This written Agreement may not be later modified except by a further writing signed by a duly authorized officer of the Company and Seller, and no term of this Agreement may be waived except by writing signed by the party waiving the benefit of such term. This Agreement hereby supersedes **any other *employment agreements* or understandings**, written or oral, between the Company and Seller.

HOA does attach the Letter of Intent, signed by Defendant Peña and her co-owner on behalf of HOA, to the Complaint which establishes, *inter alia*, an estimated sale price of $400,000, an expected settlement date on or before February 15, 2023, and a covenant not to compete barring HOA from soliciting HOA's clients for a period of five years from the close of escrow. Exh. A at 6–7. However, although the stated purpose of the Letter of Intent is to "outline contingencies relevant to proceeding to final agreement and the terms by which the final agreement of sale will be written," the Court finds those terms are not dispositive in interpreting the terms of the Agreement pursuant to the integration clause included in the Agreement and given that, by its terms, the Letter of Intent governed the parties' negotiations and conduct until the close of escrow, at which point a superseding "final agreement of the sale"—with potentially different terms thereto—would be written to settle the transaction. Exh. A at 7.

Notwithstanding that the parties failed to provide the Court with potentially relevant documents to assist the Court in its review, a review of the record shows that the following facts are undisputed:

- Prior to the sale of HOA, Defendant Peña was an officer, director and owner of 50% of the outstanding and issue stock of HOA. Mot. at 1; Resp. at 11; *see also* Exh. A at 1.

- On June 23, 2023, the parties entered into the Agreement. Compl. ¶ 9; Answer ¶ 9.

- The Agreement was related to the "purchase of [Defendant Peña's] business by [HOA]." Mot. at 1; Resp. at 11–12.

- On June 30, 2023, the parties closed on the sale of HOA. Mot. at 1.

- Following the execution of the Agreement, Defendant Peña became an employee of HOA. Compl. ¶ 9; Answer ¶ 9.

Thus, in accepting the factual allegations in the Complaint as true and construing the

Exh. A at 4 (emphasis added).

pleadings in the light most favorable to HOA, the Court deems the forgoing undisputed facts sufficient to find the Agreement was made in connection with the sale of Defendant Peña's entire ownership interest in HOA. *See, e.g.*, *Vacco Industries, Inc. v. Van Den Berg*, 6 Cal. Rptr. 2d 602, 610 (Cal. Ct. App. 1992), *modified* (Apr. 14, 1992) (finding that a non-competition agreement that "acknowledged that [defendant] was selling *all* of his shares" was "expressly motivated by and directly and integrally dependent upon [a] stock sale," even though the non-competition and stock purchase agreements were entered into at different times and did not reference each other). Accordingly, the Court holds the Agreement was made pursuant to a qualifying transaction under the limited exception of section 16601.

Next, the Court will consider, as a matter of law, whether the restrictions outlined in the challenged provisions satisfy the intent and purpose of section 16601. Like in *Fillpoint*, relied on by the parties, the Court finds they do not.

According to *Fillpoint*, the purpose of section 16601 "is to permit the purchaser of a business to protect himself or itself against competition from the seller which competition would have the effect of reducing the value of the property right that was acquired." 146 Cal. Rptr. 3d at 200 (internal quotations and citations omitted). To reach its holding that the noncompetition and nonsolicitation covenants in an employment agreement were overbroad and inconsistent with the proposes and terms of section 16601, the court distinguished the facts at issue there[9] from other state appellate court decisions analyzing section 16601. *Id.* For example, the court considered but disregarded:

- *Hilb, Rogal & Hamilton Ins. Services v. Robb*, 39 Cal. Rptr. 2d 887, 896 (Cal. Ct. App. 1995), in which there were multiple agreements but only

---

[9] "The parties have not cited us to any case with the same facts presented by this case, i.e., a purchase agreement and an employment agreement entered at roughly the same time as part of a single transaction, but containing different covenants not to compete." *Id.* at 200.

14

one covenant not to compete contained in the employment agreement;

- *Vacco*, 6 Cal. Rptr. 2d at 606, involving a stock purchase agreement, a separate noncompetition agreement, and an employment agreement containing its own noncompetition agreement; and,

- *Alliant Ins. Services, Inc. v. Gaddy*, 72 Cal. Rptr. 3d 259, 266–272 (Cal. Ct. App. 2008), involving a stock purchase agreement and an employment agreement which contained identical covenants not to compete.

*See id.* (distinguishing *Hilb*, 39 Cal. Rptr. 2d at 896 (finding an employment contract containing a covenant not to compete for three years after the employee's termination enforceable as a necessary condition of the merger agreement and rejecting arguments that "section 16601 requires that the covenant be contained in a particular type of document")); *id.* at 201–202 (finding *Vacco*, 6 Cal. Rptr. 2d at 606, "of limited relevance" because "the three documents in question did not cross-reference each other" and "because the trial court in *Vacco* did not address the covenant not to compete in the employment contract"); *id*. at 202 (finding *Alliant*, 72 Cal. Rptr. 3d at 266–272, not instructive because the covenants not to compete were identical). As discussed below, the Court agrees with the parties that an analysis pursuant to *Fillpoint* is instructive here.

Like in *Fillpoint*, the facts at issue here involve two agreements—the Purchase Agreement and the Agreement—entered at roughly the same time, as part of a single transaction, but containing different restrictive covenants. Here, the recitals in the Agreement refer to the Purchase Agreement. Although the final Purchase Agreement is missing from the record, in accepting the factual allegations in the Complaint as true and construing the pleadings in the light most favorable to HOA, the Court infers that the Letter of Intent is an accurate representation of that agreement. Thus, to the extent HOA alleges that the noncompetition covenant contained in the Letter of Intent is binding on Defendant Peña following the close of escrow, or alternatively, to the extent HOA provides the Letter of Intent as evidence of the terms of the final Purchase Agreement executed by the parties at the close of escrow, the Court finds the challenged

restrictions in the Agreement are broader and materially different than those outlined in the Letter of Intent for the following reasons.

First, unlike the Letter of Intent, the restrictions in the Agreement go into effect for five years "immediately following the termination of the Consulting Agreement" as opposed to five years "from the Close of Escrow," with the latter date relating to the effective date of the stock sale as the triggering event.  Second, the nonsolicitation covenants in the Agreement contain temporal limitations while the covenant in the Letter of Intent does not.  Finally, the restrictions in the noncompetition covenant in the Agreement are much broader than those in the Letter of Intent, including because the Agreement prohibits an expansive breadth of "other activities" that impact Defendant Peña's future employment upon termination of her employment with HOA, whilst the Letter of Intent immediately protects the value of the property right acquired in the stock purchase by limiting the restriction to solicitation of HOA's clients.  Accordingly, the Court finds the restrictions in the Agreement do not satisfy the intent and purpose of section 16601 because they target Defendant Peña's fundamental right to pursue her profession.  *See Fillpoint*, 146 Cal. Rptr. 3d at 204 (affirming trial court's ruling that the "covenants would give the buyer broad protection against competition wherever it happens to have employees or customers, at the expense of the seller's fundamental right to compete for employees and customers in the marketplace").

ii.    Trade Secret Exception

As stated, the Court accepts HOA's allegations in the Complaint as true in holding that the confidential information at issue in this case constitutes trade secrets under California state and federal laws.  Compl. ¶¶ 58–59, 68–69.

HOA cites to one case, *Alliant Insurance Services, Inc. v. Gaddy*, in support of its argument that the nonsolicitation clauses in the Agreement are valid to protect HOA's trade secrets.  72 Cal. Rptr. 3d 259, 271 (Cal. Ct. App. 2008).  In *Alliant*, the California appellate court considered whether, for purpose of issuing a preliminary injunction, a noncompetition clause in a stock purchase agreement made pursuant to the

sale of a business was valid to protect the plaintiff employer's trade secrets. *Id.* at 271–272. Under this exception, "[a] covenant for an employee not to solicit the employer's clients upon termination of the employment may be valid [under section 16600] if necessary to protect the employer's trade secrets." *Id.* at 271; *Muggill v. Reuben H. Donnelley Corp.*, 398 P.2d 147, 149 (Cal. 1965). In finding no abuse of discretion, the appellate court relied on the trial court's factual findings that 1) the confidential information at issue constituted trade secrets and 2) under the terms of the stock purchase agreement, which were identical to those in defendant employee's employment agreement, the nonsolicitation covenant "related only to defendant's employment by [plaintiff], not his sale of [the company]" and was therefore valid to protect trade secrets learned by the defendant employee during the term of their employment. *Id.* at 271. Accordingly, the court affirmed the trial court's holding that the nonsolicitation clause was valid under the limited trade secret exception. *Id.*

HOA's reliance on the limited exception outlined in *Alliant* is misplaced for several reasons. First, procedurally, *Alliant* reviewed an order granting a preliminary injunction which involves a different standard of proof than the one used to decide a motion for judgment on the pleadings. *Compare id.* at 266–267 (affirming grant of preliminary injunction based an abuse of discretion standard) with *Thompson v. Impaxx, Inc.*, 7 Cal. Rptr. 3d 427, 431–432 (Cal. Ct. App. 2003) (reversing judgement on the pleadings in finding that, taking allegations in the complaint as true, the trade secret exception did not apply). Second, *Alliant* did not consider whether the nonsolicitation clause in the stock purchase agreement was valid on its own terms under the exception because, unlike here, that clause was identical to the one in the employment agreement. *Id.* at 271–272; *see also Fillpoint*, 146 Cal. Rptr. 3d at 200 (finding irrelevant and not instructive "any case with[out] the same facts presented by this case" in applying section 16600). Third, unlike the court's reasoning in *Alliant,* HOA argues here that the nonsolicitation clause relates only to the *stock purchase* rather than HOA's *employment* of Defendant Peña. Resp. at 10–11; *Alliant*, 72 Cal. Rptr. 3d at 271. In fact, HOA

specifically argues that "[t]here are no facts alleged indicating that the non-competition agreement is an employment agreement of any type and [the Agreement] specifically states on its face that it is related to the purchase of Peña's stock." Resp. at 13. Fourth, the relevance of *Alliant* and the trade secret exception on this Court's analysis is questionable given that *Alliant* was decided prior to the California Supreme Court's landmark ruling in *Edwards v. Arthur Andersen LLP*, discussed above, in which the Supreme Court expressly declined to "address the applicability of the so-called trade secret exception to section 16600" as the issue was not before the court. *Edwards*, 189 P.3d at 291 n.4. Accordingly, the Court finds that *Alliant* is not instructive here.

Although the Ninth Circuit recognizes a trade secret exception to section 16600, HOA does not cite—nor has this Court found—any Ninth Circuit authority analyzing or upholding a noncompete agreement or clause pursuant to the trade secret exception that would otherwise be invalid under section 16600 and its progeny as established in *Edwards*. *See, e.g.*, *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 758 (9th Cir.2008) (recognizing a trade secret exception to section 16600 but finding the noncompetition agreement invalid because the exception did not apply). Given that HOA does not cite additional authority compelling this Court to find a trade secret exception to the Court's holding that the Agreement is void under section 16600, the Court finds that no such exception exists under the facts of this case.

In light of the foregoing, the Court HEREBY ORDERS the Agreement VOID and UNENFORCEABLE as a matter of law under Cal. Bus. & Prof. Code § 16600 and pursuant to California's strong public policy of permitting employees the right to pursue a lawful occupation of their own choice.

IT IS FURTHER ORDERED Defendant Peña's motion for judgment on the pleadings is GRANTED as to HOA's cause of action for Breach of Written Non-Competition and Non-Disclosure Agreement.

### 3. Uncontested Claims

To the extent Defendant Peña moves for judgement on the pleadings on her

remaining claims alleging causes of action for (2) Conversion, (3) Intentional Interference with Contractual Relations, (4) Intentional Interference with Prospective Economic Advantage, (5) Trade Secret Misappropriation Under the Defend Trade Secrets Act under 18 U.S.C. § 1836, and (6) Misappropriation of Trade Secrets under Cal. Civ. Code §3426, Defendant Peña fails to cite any law or facts in support.

As to Defendant Peña's challenge to HOA's claims for misappropriation of trade secrets, the Court must accept as true HOA's allegations in the Complaint that the confidential information at issue constitutes trade secrets under California state and federal laws. Compl. ¶¶ 58–59, 68–69. Thus, even under the liberal pleading standard applied to pro se defendants, *Fleming*, 581 F.3d at 925, Defendant Peña's argument that the information is not protectable because it is available in the public domain is insufficient under the standard to show she is entitled to judgment as a matter of law. Mot. at 3; Reply at 5.

Because Defendant Peña has failed to state a sufficient factual or legal basis in support of her Motion as to the remaining claims, the Court finds that issues of material fact exist, and Defendant Peña is not entitled to judgment as a matter of law. Accordingly, the Court DENIES Defendant Peña's motion for judgment on the pleadings as to the remaining claims.

**B. Motion for Sanctions**

Defendant Peña moves for sanctions arguing that HOA's claims are without merit and frivolous, and therefore requesting damages for lost wages, benefits loss, job searches, and emotional distress:

- $9,000 attorney's fees;
- $64,000 lost wages (Sept. 2024 - April 2025);
- $13,200 job search (through April 2025);
- $19,200 lost wages (May - July 2025);
- $6,400 lost wages (August 2025);
- $2,695 401K benefit loss (through August 2025);

• $1,750 job search (May - July 2025); and,

• $500.00 job search (August 2025).

Reply at 6.  Defendant Peña's original motion also sought sanctions "due to emotional distress, mental anguish." Mot. at 3.  Defendant Peña provides no argument connecting HOA's claims to her claim for sanctions other than her general argument that the Agreement is void as a matter of law.

Under Rule 11, "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2).  Here, Defendant Peña improperly files her motion for sanctions in conjunction with her motion for judgment on the pleadings in violation of Rule 11. Defendant Peña also fails to comply with other procedural and substantive requirements of Rule 11, such as providing the offending party substantive and procedural notice of a violation and a reasonable opportunity to respond.

Accordingly, the Court DENIES Defendant Peña's motion for sanctions.

### III. CONCLUSION

IT IS HEREBY ORDERED:

1. The Non-Competition and Non-Disclosure Agreement is **VOID** and **UNENFORCEABLE** under California law.

2. Motion for judgment on the pleadings is **GRANTED** as to the cause of action for Breach of Written Non-Competition and Non-Disclosure Agreement.

3. Motion for judgment on the pleadings is **DENIED** as to the cause of action for Conversion.

4. Motion for judgment on the pleadings is **DENIED** as to the cause of action for Intentional Interference with Contractual Relations.

5. Motion for judgment on the pleadings is **DENIED** as to the cause of action for Intentional Interference with Prospective Economic Advantage.

6. Motion for judgment on the pleadings is **DENIED** as to the cause of action

for Trade Secret Misappropriation Under the Defend Trade Secrets Act under 18 U.S.C. § 1836.

7. Motion for judgment on the pleadings is **DENIED** as to the cause of action for Misappropriation of Trade Secrets under Cal. Civ. Code §3426.

8. Motion for sanctions is **DENIED**.

IT IS FURTHER ORDERED the stay on all proceedings previously issued by this Court is VACATED.  ECF No. 33.  The case shall proceed according to a **Superseding Scheduling Order** to be issued by the **Honorable Magistrate Judge Michelle M. Pettit.**

IT IS SO ORDERED.

DATED: March 27, 2026

_____

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE