UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SMARTER HOA SOLUTIONS INC.,
Plaintiff,

v.

CARMEN PEÑA; CASANET PROPERTY MANAGEMENT, LLC,
Defendants.

Case No.: 3:24-cv-01781-JAH-MMP

**ORDER GRANTING RENEWED MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION**

**[Dkt. No. 54]**

Before the Court is Defendant Casanet Property Management, LLC's ("Casanet") Renewed Motion for Good Faith Settlement Determination between Defendant Casanet and Plaintiff Smarter HOA Solutions Inc. ("HOA") (collectively, the "Settling Parties"), filed pursuant to Cal. Code of Civ. Proc. § 877.6. Dkt. No. 54-1 ("Mot."). Defendant Carmen Peña, proceeding pro se, opposes the Motion and Defendant Casanet has replied. Dkt. Nos. 57 ("Opp'n"), 58 ("Reply"). The parties also filed supplemental briefing pursuant to the Court's July 31, 2026, order finding insufficient facts to evaluate whether the Settling Parties' proposed settlement was made in good faith. *See* Dkt. Nos. 67 ("Suppl. Br. Order"), 68 ("Suppl. Br."), 70 ("Suppl. Resp."), 71 ("Suppl. Reply").

For the reasons discussed below, the Court **GRANTS** the Motion and determines that the proposed settlement between the Settling Parties was made in good faith pursuant to California Code of Civil Procedure section 877.6.

**BACKGROUND**

The complete background of this case is discussed in detail in the Court's prior Orders. *See* Dkt. Nos. 51, 52, 67, 69. Relevant here, both HOA and Casanet engage in the business of providing management services for homeowner associations. Defendant Peña was previously an officer, director, and owner of HOA and was subsequently a consultant for both HOA and Casanet, albeit at different times.

Plaintiff HOA alleges four causes of action against Defendant Casanet: (1) Intentional Interference with Contractual Relations; (2) Intentional Interference with Prospective Economic Advantage; (3) Trade Secret Misappropriation Under the Defend Trade Secrets Act, 18 U.S.C. § 1836; and, (4) Misappropriation of Trade Secrets under Cal. Civ. Code § 3426. *See* Dkt. No. 1 ("Complaint"). Relevant here, Plaintiff HOA's Complaint does not specifically allege damage amounts or state the quantity or total value of all HOA contracts at issue between the Settling Parties. *See generally* Compl.

On July 24, 2025, Defendant Casanet filed a motion for good faith settlement determination on behalf of the Settling Parties pursuant to Cal. Civ. Proc. Code § 877.6. Dkt. No. 35. The terms of the proposed settlement sought, *inter alia*, non-compete provisions between the Settling Parties, a "no call list" of clients, and a "no hire" restriction against Defendant Peña or her family members. *Id.* Defendant Peña opposed the motion, and Defendant Casanet replied. *See* Dkt. Nos. 44, 46. Plaintiff HOA also filed a declaration in response to Defendant Peña's opposition. *See* Dkt. No. 45.

On March 27, 2026, the Court denied the Settling Parties' motion for good faith settlement determination, declining to consider the merits of the motion and finding the proposed settlement unenforceable under Cal. Bus. & Prof. Code § 16600. Dkt. No. 52.

On April 1, 2026, Defendant Casanet filed the instant Motion on behalf of the Settling Parties, curing the concerns identified by the Court in denying Defendant Casanet's prior motion but seeking a good faith settlement determination on substantially the same grounds. Dkt. No. 54 at 2. Defendant Peña opposes the Motion and Defendant Casanet has filed a reply. *See generally* Opp'n, Reply.

On April 9, 2026, Magistrate Judge Pettit stayed discovery between Plaintiff HOA and Defendant Casanet pending this Court's ruling on the instant Motion. Dkt. No. 56.

On July 31, 2026, the Court deferred ruling on the Motion and ordered supplemental briefing limited in scope to address deficiencies identified in the Court's order. *See* Suppl. Briefing Order. Notably, the Court found the record was devoid of facts from which to evaluate a rough approximation of Plaintiff HOA's total recovery and Defendant Casanet's proportionate liability. Suppl. Briefing Order at 8–10. Accordingly, the Court ordered the Settling Parties to "supplement their Motion with affidavits, declarations or other evidence that address the deficiencies identified in this [Court's] Order," permitted Defendant Peña to respond only to new information provided in the Supplemental Briefing, and permitted the Settling Parties to reply thereto. *Id.* at 10–11.

On August 17, 2026, Defendant Casanet timely filed a supplemental brief on behalf of the Settling Parties setting forth the factual basis for their valuation of Plaintiff HOA's potential recovery and of Defendant Casanet's exposure on the claims alleged against it. Defendant Peña and Defendant Casanet timely filed a supplemental response and a supplemental reply respectively.

The Motion is now fully briefed and ripe for determination on the merits.

## DISCUSSION

### I. Legal Standard

Federal courts apply the substantive provisions of § 877 to determine whether a settlement agreement was made in good faith. *Fed. Sav. & Loans Ins. Corp. v. Butler*, 904 F.2d 505, 511 (9th Cir. 1990) ("section 877.6 procedures do not govern a federal action . . . [but] the substantive provisions . . . are applicable"); *Rutgard v. Haynes*, 61 F. Supp. 2d 1082, 1085 (S.D. Cal. 1999) ("Cal. Code Civ. Pro. § 877 applies to federal court actions, and authorizes a federal court to determine if a prior settlement agreement from a state court case was entered into in good faith."). The major goals of the statute are "first, equitable sharing of costs among the parties at fault, and second, encouragement of settlements." *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 698 P.2d 159, 163 (Cal. 1985)

(quoting *River Garden Farms, Inc. v. Super. Ct.*, 26 Cal. App. 3d 986, 993 (Cal. Ct. App. 1972). The California statute provides, in pertinent part:

> Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:
>
> (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater.
>
> (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.

Cal. Civ. Proc. Code §877.

A court's determination of good faith settlement "bar[s] any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Civ. Proc. Code §877.6(c).

In *Tech-Bilt*, the California Supreme Court established that a settlement is made in "good faith" under § 877.6 if "the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." 698 P.2d at 166. According to the court, the "reasonable range" test "leaves substantial latitude to the parties and to the discretion of the trial court" to determine whether a settlement is made in good faith. *Id.* at 167.

Under *Tech-Bilt*, the California Supreme Court enumerated six factors courts should consider in determining whether a settlement was made in good faith:

1) A rough approximation of the plaintiff's total recovery and the settlor's proportionate liability;

2) The amount paid in settlement;

3) The allocation of settlement proceeds among plaintiffs;

4) A recognition that a settlor should pay less in settlement than if found liable after trial;

5) The financial conditions and insurance policy limits of settling defendants; and,

6) Whether there is evidence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants.

*Id.* at 166–167.

A district court's good faith determination under § 877.6 is "fact-sensitive and discretionary." *Shawmut Bank, N.A. v. Kress Assoc.*, 33 F.3d 1477, 1504 (9th Cir. 1994). "[A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Tech-Bilt*, 698 P.2d at 167 (quoting *Torres v. Union Pac. R.R. Co.*, 157 Cal. App. 3d 499, 509 (Ct. App. 1984)). Because a "trial court is charged only with making a 'rough approximation' of a settling defendant's 'proportionate liability' based on information 'available at the time of settlement. . . . any factual findings or determinations made on contested issues of liability or damages are tentative and solely for the purposes of evaluating the good faith of a proposed settlement *as of the date of such evaluation*." *Toyota Motor Sales U.S.A., Inc. v. Super. Ct.*, 220 Cal. App. 3d 864, 879 n.9. (citing *Tech-Bilt*, 698 P.2d at 167) (emphasis in original).

Defendant Peña objects to a determination of good faith settlement under § 877.6 and therefore bears the burden of proof to demonstrate "the settlement is so far 'out of the ballpark' . . . as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt*, 698 P.2d at 167. The Court will "liberally construe" Defendant Peña's pleadings given that Defendant Peña is appearing pro se. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[a] document filed pro se is 'to be liberally construed'"); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

## II. Good Faith Determination Pursuant to § 877.6

The Settling Parties seek a determination that their proposed settlement ("Proposed

Settlement") was made in good faith under § 877.6. Under the terms of the Proposed Settlement, Defendant Casanet seeks to pay Plaintiff HOA a total of $108,000, paid in monthly installments, in exchange for Plaintiff HOA's dismissal of all claims against Defendant Casanet. Mot. at 2. The Proposed Settlement also requests a "standard mutual release/ § 1542 waiver limited to the Settling Parties and their defined affiliates, an agreement to refrain from the use of trade secrets, a neutral non-disparagement between the Settling Parties only, court-retained jurisdiction for enforcement, timing mechanics, and dismissal upon completion." *Id.*

In support, Defendant Casanet addresses each of the *Tech-Bilt* factors to argue the Proposed Settlement was made in good faith. Specifically, Defendant Casanet argues: the proposed settlement amount "reflects a reasoned allocation for claims asserted against CASANET after considering disputed liability, causation, and damages, and the relative roles of non-settling parties"; the proposed settlement amount "is substantial and is within a reasonable range given the claims at issue and litigation posture"; there are no allocation issues given that Plaintiff HOA is the sole plaintiff to the action; the proposed settlement amount "recognizes that a settlor pays less in settlement than if found liable after trial, consistent with *Tech-Bilt*"; the stipulated judgment "is tailored to CASANET's realities while ensuring meaningful recovery to Plaintiff"; and the "record shows arm's-length negotiations between adversaries" devoid of collusion or prejudice to Defendant Peña. *See* Mot. at 5. In addition, Defendant Casanet's Supplemental Briefing provides an estimated accounting of the revenues, expenses, and contract values of three contracts at issue between the Settling Parties. *See* Suppl. Br. at 3–5.

Defendant Peña opposes, arguing the settlement "attempt[s] to monetize a void contract," "is a lopsided application of justice," and that settlement is improper because the litigation is based on invalid trade secret claims. *See generally* Opp'n. Defendant Peña's Supplemental Response also alleges Defendant Casanet's proportionate liability is "objectively zero," characterizes Defendant Casanet's calculations as speculative and internally contradictory, and asserts that the $108,000 payment evidences collusion and an

improper effort to subsidize Plaintiff HOA's continued litigation against her. *See generally* Suppl. Resp.

Defendant Casanet responds that Defendant Peña applies the incorrect legal standard, that the Proposed Settlement does not prejudice Defendant Peña because she receives a corresponding setoff, and that *Tech-Bilt* requires only an approximation based on the information available at the time of settlement. *See generally* Suppl. Reply.

1. *Tech-Bilt* Factors

When considering the good faith determination of a settlement, the court need not evaluate every factor, unless the determination is contested. *City of Grand Terrace v. Super. Ct.*, 192 Cal. App. 3d 1251, 1261 (Ct. App. 1987). "[W]hen the good faith nature of a settlement is disputed, it is incumbent upon the trial court to consider and weigh the *Tech-Bilt* factors." *Id.* No single factor is dispositive in the determination of good faith, however the proportion of liability is weighed heavily. *Toyota Motor Sales U.S.A., Inc. v. Super. Ct.*, 220 Cal. App. 3d 864, 871 (Ct. App. 1990). Thus, the Court will evaluate each of the *Tech-Bilt* factors given that the Proposed Settlement is contested.

Under the first and most heavily weighted *Tech-Bilt* factor, the Court must evaluate a rough approximation of Plaintiff HOA's total recovery and Defendant Casanet's proportionate liability. *Tech-Bilt*, 698 P.2d at 166–67; *Toyota Motor Sales*, 220 Cal. App. 3d at 871. Here, Defendant Casanet represents it acquired three one-year homeowner association management contracts previously managed by Plaintiff HOA—the Orangewood, Verona, and Arboretum HOAs. Suppl. Br. at 3. According to Defendant Casanet, the three contracts generate gross payments of $8,795.00 per month, or $105,540 in annual gross income.[1] *Id.* at 4. Defendant Casanet pays an accounting service $31,140

---

[1] Defendant Casanet explains that the calculations of compensatory damages are based upon Casanet's contracts with the three homeowner associations:

> To date, Plaintiff has not produced the three contracts with the HOAs at issue since the parties have stayed discovery during the pendency of the motion for

per year to collect the homeowners' dues and prepare financial reports for the HOAs, yielding a net figure of $74,400 per year before other business expenses. *Id*. Defendant Casanet represents that Plaintiff HOA received and retained three months of management fees for each of the contracts after Defendant Casanet acquired the contracts such that the remaining term of the one-year contracts was at most nine months. *Id*. Accordingly, Defendant Casanet estimates Plaintiff HOA's lost profits at $55,800—seventy-five percent of the $74,400 annual net figure. *Id.* at 4.

In addition, relying on the December 19, 2022, Letter of Intent underlying Plaintiff HOA's purchase of the business from Defendant Peña, which assigned a value of $10,000 per management contract lost, Defendant Casanet calculates the diminution in the value of Plaintiff HOA's business attributable to the three terminated contracts at $30,000. *Id*.; *see also* Compl., Ex. A at 6–7 (Letter of Intent to Purchase). Together, Defendant Casanet projects its full potential exposure at $127,533.17 based on the $55,800 in Plaintiff HOA's estimated lost profits, the $30,000 diminution in Plaintiff HOA's business value, and $41,733.17 in unjust enrichment based on Defendant Casanet's adjusted net business income. *Id.* at 4–5.

As to this factor, the Court finds that Defendant Casanet's Supplemental Briefing provides the factual support necessary to determine that the Settling Parties have entered into a settlement in good faith. Measured against Defendant Casanet's own projections, the $108,000 settlement payment exceeds the $85,800 sum of Plaintiff HOA's estimated lost profits and diminution in business value, and amounts to approximately eighty-five

---

> good faith settlement determination. Without the contracts, CASANET is unable to calculate the precise contract amounts, including the remaining term of the contract, monthly price term and any offsets to the gross income such as accounting or other services.

*Id*. at 3 n.1. In addition, the Court notes that the Settling Parties not provided evidence of, nor does Plaintiff's Complaint state, the quantity or total value of HOA contracts at issue between the Settling Parties. *See generally* Mot.; Compl.

percent of Defendant Casanet's projected full exposure of $127,533.17. Suppl. Br. at 5. A settlement figure at or near the high end of the settling defendant's reasonably estimated exposure is not "grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Tech-Bilt*, 698 P.2d at 167 (quoting *Torres*, 157 Cal. App. 3d at 509). Moreover, because the settlement payment approaches the full measure of the compensatory damages Plaintiff HOA could plausibly recover on the claims asserted against Defendant Casanet, the settlement leaves little risk that Defendant Peña will be left to bear a share of liability properly attributable to Defendant Casanet—the principal equitable concern animating the statute. *See Tech-Bilt*, 698 P.2d at 163.

Under *Tech-Bilt*, the approximate calculations provided by Defendant Casanet are sufficient for the Court to evaluate both the total recovery available to Plaintiff HOA on the claims asserted against Defendant Casanet and Defendant Casanet's proportionate share of that recovery.[2] *See Com. Union Ins. Co. v. Ford Motor Co.*, 640 F.2d 210, 213 (9th Cir. 1981) (holding that representations by counsel about the conduct of settling parties is competent evidence of a "mutual decision to settle the dispute"). *Tech-Bilt* does not demand precision. The evaluation must "be made on the basis of information available at the time of settlement," and the required approximation is expressly a rough one. *Tech-Bilt*, 698 P.2d at 166–67. On the current record, the Court agrees with Defendant Casanet that Plaintiff has not alleged sufficient facts showing malice as to Defendant Casanet to justify punitive damages. *See generally* Compl. Thus, based on the record before the

---

[2] The Court expresses no view on the merits of Plaintiff HOA's remaining claims against Defendant Peña or of Defendant Casanet's assertion that the contracts at issue were terminated for cause. *See* Suppl. Br. at 3 n.2. "These are issues which may ultimately be contested and litigated at trial." *Toyota Motor Sales*, 220 Cal. App. 3d at 879 n.9. "Moreover, any good faith determination once made is unaffected by subsequent determinations made at trial as to the actual liability of the parties or the amount of damages sustained by a plaintiff." *Id.* (citation omitted).

Court, the Court finds Defendant Casanet's calculations based on compensatory damages and unjust enrichment reasonable and in good faith. Accordingly, based on the first factor, the Court finds the Proposed Settlement was made in good faith under § 877.6.

The remaining *Tech-Bilt* factors likewise support a determination of good faith. The amount paid—$108,000 in monthly installments—is substantial in absolute terms and relative to the approximated recovery. Plaintiff HOA is the sole plaintiff, so no issue arises concerning the allocation of settlement proceeds among plaintiffs. The settlement appropriately reflects "a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial," indeed, the discount from Defendant Casanet's projected full exposure is a modest one. *Tech-Bilt*, 698 P.2d at 166. As to the financial condition of the settling defendant, Defendant Casanet's financial showing of an adjusted net profit of $41,733.17 on the three contracts at issue before staffing costs, and a net loss thereafter—suggests that a $108,000 installment obligation is a significant commitment relative to Defendant Casanet's means, and no insurance policy limits have been identified as relevant. *See* Suppl. Br. at 4–5. Finally, as discussed in the Court's analysis of Defendant Peña's objections, the Court finds no evidence of collusion, fraud, or tortious conduct aimed to injure Defendant Peña's interests.

Accordingly, the Court finds that the Proposed Settlement between the Settling Parties was made in good faith under § 877.6, subject to the Court's evaluation of Defendant Peña's objections.

2. <u>Defendant Peña's Objections</u>

As the party asserting the lack of good faith, Defendant Peña bears the burden of proof. Cal. Civ. Proc. Code § 877.6(d); *Tech-Bilt*, 698 P.2d at 167. To carry that burden, Defendant Peña must demonstrate that the settlement is so far "out of the ballpark" in relation to the *Tech-Bilt* factors as to be inconsistent with the equitable objectives of the statute. *Tech-Bilt*, 698 P.2d at 167. In liberally construing Defendant Peña's four main arguments, the Court find that Defendant Peña fails to satisfy her burden. *See Erickson*, 551 U.S. at 94.

First, Defendant Peña contends that because the Court determined that the non-competition agreement between Plaintiff HOA and Defendant Peña is unenforceable, *see* Dkt. No. 51, Defendant Casanet's proportionate liability is "objectively zero," rendering any six-figure payment disproportionate by definition. Suppl. Resp. at 2. This argument misstates both the Court's prior order and the governing standard. The claims resolved by the Proposed Settlement—intentional interference with contractual relations, intentional interference with prospective economic advantage, and misappropriation of trade secrets under federal and California law—remain pending against Defendant Casanet, and are predicated on Defendant Casanet's acquisition of the Orangewood, Verona, and Arboretum management contracts, not on the enforceability of the non-competition agreement between Plaintiff HOA and Defendant Peña. *See* Compl.; Suppl. Br. at 2–3. The Court's March 27, 2026 order issuing judgment in favor of Defendant Peña on Plaintiff HOA's breach of contract claim did not dispose of those claims. *See* Dkt. No. 51. Moreover, a determination of good faith does not require a settling defendant to concede liability or to pay a judicially established share of fault. *Tech-Bilt* recognizes that damages are frequently speculative and that the probability of liability is often uncertain or remote, which is why settlement value is measured by a rough approximation of potential exposure rather than by adjudicated fault. *See Tech-Bilt*, 698 P.2d at 166–67. That Defendant Casanet continues to maintain defenses on the merits while paying a substantial sum to end the litigation is the ordinary posture of a settling defendant; it is not evidence of bad faith.

Second, Defendant Peña argues that Defendant Casanet's calculations are speculative and internally contradictory. Defendant Peña argues that Defendant Casanet cannot calculate the precise contract amounts without the three underlying contracts at issue because Defendant Casanet maintains that the contracts were terminated as to Plaintiff HOA for cause and thus produced no damages as to Defendant Casanet. Suppl. Resp. at 2–3 (citing Suppl. Br. at 3 nn.1–2). The Court finds this argument unavailing in light of the record before the Court. Discovery between the Settling Parties is stayed pending resolution of this Motion, Dkt. No. 56, and the contracts have not been produced.

*Tech-Bilt* requires only that the evaluation be made on the basis of the information available at the time of settlement. 698 P.2d at 167. Defendant Casanet has provided estimated revenue and expense amounts drawn from its own performance of the contracts at issue, which the Court finds to be competent evidence from which Defendant Casanet may calculate a rough approximation of proportionate liability. *See Owen By & Through Owen v. United States*, 713 F.2d 1461, at 1466 n.8 (9th Cir. 1983) ("The statements of counsel regarding the circumstances surrounding settlement are competent evidence on the question of good faith.") (citation omitted). Defendant Peña's argument goes to the weight of that showing, not to its existence. Nor are Defendant Casanet's disputes as to liability and damages inconsistent with good faith given that, under the standard applied here, "factual findings or determinations made on contested issues of liability or damages are tentative and solely for the purposes of evaluating the good faith of a proposed settlement." *See Toyota Motor Sales*, 220 Cal. App. 3d at 879 n.9.

Third, Defendant Peña's central argument—that $108,000 exceeds any exposure Defendant Casanet could actually face—alleges no cognizable injury to her interests. The good faith requirement principally protects nonsettling defendants against settlements that are disproportionately low relative to the settling defendant's share of fault, which would leave the nonsettling defendants to bear more than their equitable share of the plaintiff's recovery. *See Tech-Bilt*, 698 P.2d at 163. A settlement that is "too high" operates in Defendant Peña favor. Under section 877(a), the claims against Defendant Peña are reduced by the amount stipulated in the release or the amount of the consideration paid, whichever is greater, while the accompanying good faith determination bars only claims against Defendant Casanet for contribution and comparative indemnity. Cal. Civ. Proc. Code §§ 877(a), 877.6(c); *see Abbott Ford, Inc. v. Super. Ct.*, 43 Cal. 3d 858, 873 (1987); *Reed v. Wilson*, 73 Cal. App. 4th 439, 444 (Ct. App. 1999). Put differently, pursuant to the terms of the Proposed Settlement, Defendant Peña stands to receive a dollar-for-dollar reduction of the $108,000 payment against any judgment Plaintiff HOA may obtain against Defendant Peña.

Fourth, Defendant Peña asserts that the Proposed Settlement is collusive, "an exit engineered to absorb Plaintiff HOA's attorneys' fees, to strip away the parties and discovery necessary to test Plaintiff HOA's trade secret allegations, and to isolate her as the sole remaining defendant." Suppl. Resp. at 3–5. "Collusion" is a secret combination, conspiracy, or concert of action between two or more persons for a fraudulent or deceitful purpose. *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1160 (9th Cir. 1984) (quoting Black's Law Dictionary 240 (5th ed. 1979)). Defendant Peña fails to allege any facts showing secret, fraudulent, or deceitful concerted action. Rather, Defendant Peña appears to allege collusion based on the mere fact that the Settling Parties having negotiated a settlement between themselves.

However, that the Proposed Settlement ends Defendant Casanet's defense costs or that Plaintiff HOA will be compensated reflects ordinary and legitimate motivations attending nearly every settlement rather than tortious conduct aimed at injuring Defendant Peña's interests. Nor does the Proposed Settlement impair Defendant Peña's defense. The stay of discovery between the Settling Parties was ordered pending resolution of this Motion, Dkt. No. 56, and a good faith determination bars only claims against Defendant Casanet for equitable comparative contribution or partial or comparative indemnity. Cal. Civ. Proc. Code § 877.6(c). It does not limit Defendant Peña's ability to conduct discovery of, or to subpoena testimony and documents from Defendant Casanet or its representatives. Finally, that Defendant Peña will remain a defendant after Defendant Casanet settles is precisely the consequence sections 877 and 877.6 contemplate, not evidence bad faith. Accordingly, the Court finds no evidence of collusion between the Settling Parties. To the contrary, the record shows the Proposed Settlement was negotiated at arm's length by the Settling Parties, with valuable consideration flowing from Defendant Casanet to Plaintiff HOA, and which benefits Defendant Peña by proportionally reducing her potential liability.

In sum, Defendant Peña opposes the Motion in principle but fails to do so in substance. Defendant Peña's arguments litigate Plaintiff HOA's underlying claims rather than addressing substantive objections to a determination of good faith under § 877.6.

Because Defendant Peña fails to allege a cognizable injury to her interests pursuant to the *Tech-Bilt* factors, the Court finds that Defendant Peña failed to satisfy her burden to prove the Proposed Settlement was not made in good faith pursuant to § 877.6.

Accordingly, the Court finds that, on the record presently before the Court, the Proposed Settlement between the Settling Parties was made in good faith pursuant to § 877.6. *See Tech-Bilt*, 698 P.2d at 166–67.

## CONCLUSION

For the reasons set forth above, and after careful review of the parties' briefing and the record before the Court, the Court FINDS the Proposed Settlement was made in good faith within the meaning of California Code of Civil Procedure section 877.6.

Accordingly, **IT IS HEREBY ORDERED**:

1. The Court **GRANTS** Defendant Casanet's Renewed Motion for Good Faith Settlement Determination, Dkt. No. 54, and **FINDS** that the Proposed Settlement between Defendant Casanet and Plaintiff HOA was entered into in good faith pursuant to California Code of Civil Procedure section 877.6;
2. Pursuant to California Code of Civil Procedure section 877.6(c), any claims by joint tortfeasors or co-obligors against Defendant Casanet for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault, are **BARRED**;
3. Pursuant to California Code of Civil Procedure section 877(a), the claims against Defendant Peña shall be reduced by the amount stipulated in the release or the amount of the consideration paid for it, whichever is greater; and,
4. The Settling Parties shall file the appropriate documents to effectuate the dismissal of Plaintiff HOA's claims against Defendant Casanet consistent with the terms of the Proposed Settlement.

//

IT IS SO ORDERED.

DATED: September 18, 2026

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE